Matthew Shepard, OSB #105009
Law Office of Matthew G. Shepard
685 Church St NE, Salem, OR 97301
Telephone: (503) 385-0121
matt@mshepardlaw.com

Brady Mertz, OSB #970814
Brady Mertz, PC
685 Church St NE, Salem, OR 97301
Telephone: (503) 385-0121
brady@bradymertz.com

*Attorneys for Plaintiff Robert Rosenberg*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ROBERT ROSENBERG, an individual, Plaintiff / Class Representative, <br><br> v.s. <br><br> HORIZON REALTY ADVISORS LLC, a Washington limited liability company, and HRA STADIUM PARK LLC, a Washington limited liability company, Defendants. | CASE NO. 6:22-cv-00278-MC <br><br> PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT AND MEMORANDUM IN SUPPORT |

**MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiff and Settlement

Class Representative Robert Rosenberg moves the Court as follows:

Class Counsel, on behalf of Plaintiff and the proposed Settlement Class, and Defendants

(together, the "Parties") have agreed to settle all claims of the proposed Settlement Class against

Defendants, as more particularly set forth in the Settlement Agreement filed herewith as Exhibit

A (the "Settlement Agreement").

The purpose and intent of all Parties to this proposed Settlement are to settle any and all

claims of any type related to Defendants' utility billing practices; to terminate and extinguish any liability of the Defendants for all Released Claims of the Settlement Class Members; and to dismiss on the merits and with prejudice all claims of the proposed Settlement Class against Defendants.

The Parties now seek preliminary approval from this Court of the terms of the proposed Settlement Agreement, including:

a. Preliminary approval of the proposed Settlement memorialized in the proposed Settlement Agreement as being fair, adequate, and reasonable, such that notice to the Class should be provided pursuant to the proposed Settlement Agreement;

b. Certification of the Settlement Class as defined in the proposed Settlement Agreement for settlement purposes only;

c. Appointing Plaintiff as the Class Representative;

d. Appointing Plaintiff's Counsel as Class Counsel;

e. Approval of the form, content, and manner of the Class Notice, finding them to constitute the best practicable method under the circumstances and to satisfy Rule 23, due process and all other applicable laws;

f. Appointment of the Angeion Group as the Settlement Claims Administrator (the "Settlement Claims Administrator"); and

g. Approving the Parties' proposed schedule for: (i) notice to the Class; (ii) opting out of the Settlement; (iii) submitting objections; and (v) the Final Approval Hearing.

A proposed preliminary approval order is filed herewith as Exhibit B.

# MEMORANDUM IN SUPPORT

## I.    INTRODUCTION

Plaintiff, Robert Rosenberg, is an Oregon residential tenant who rented a dwelling unit at the Stadium Park Apartments in Eugene, Oregon located at 90 Commons Dr., Eugene, OR 97401. Defendant HRA Stadium Park LLC is the fee title owner of the Stadium Park Apartments, and therefore was Plaintiff's landlord. Defendant Horizon Realty Advisors LLC is a real estate syndication investment firm that raises capital for the purchase of and manages apartment complexes in and around major universities, including in Eugene and Corvallis, Oregon. Horizon Realty Advisors LLC manages the Stadium Park Apartments, and therefore was also Plaintiff's landlord.

Plaintiff filed this class action lawsuit against the Defendants alleging that they had violated certain statutory utility billing requirements under the Oregon Residential Landlord and Tenant Act (the "ORLTA"). The Parties have reached a proposed settlement (the "Settlement."). They have done so after exchanging over twenty (20) gigabytes of discovery; briefing, arguing, and receiving a ruling on a key issue; and engaging in settlement negotiations, including with the assistance of an experienced private mediator. The Settlement provides significant monetary relief to the class and avoids the substantial risks and time investments of trial and appeal.

Under the Settlement, Defendants agree to (1) certification of a settlement class; (2) provide substantial and meaningful compensation to the Plaintiff and the putative class in the amount of $2,400,000 in cash; and (3) consent to the designation of Plaintiff as the Class Representative, and his attorneys, Matthew Shepard, and Brady Mertz as Class Counsel. Defendants have also agreed to separately cover up to $100,000 of administration costs. Plaintiff requests an incentive award of $10,000—to be taken from the settlement fund—for his diligence

and participation in the advancement of the interests of the Class. Class Counsel will also request the approval of an award of Class Counsel's attorney fees from the Total Settlement Fund not to exceed 25% of the settlement fund as well as recovery of their reasonable costs and expenses.

The Class Representative and Class Counsel are fully aware of the strengths and weaknesses of the claims at issue and have evaluated the fairness of its resolution at this time, weighed against the risks of continued litigation. The Settlement appropriately balances the Plaintiff's objective of enforcing and ensuring compliance with the ORLTA, while protecting against the risks inherent to continued litigation. Plaintiff and Class Counsel believe that the Settlement is in the best interests of the Settlement Class given the factual and legal framework of the case and, based on their extensive experience litigating tenant utility charge actions, believe its terms are fair, reasonable, and adequate.

## II.    BACKGROUND

A.    **The Plaintiff's Allegations.** Plaintiff is the Defendants' residential tenant, whom Defendants charged, or caused to be charged, for his use of utilities consumed at his dwelling unit. Plaintiff alleges that Defendants failed to comply with Oregon's utility billing statute, ORS 90.315, by: (1) failing within 30 days after receipt of the utility provider's bill or service provider's bill to bill tenants in writing; (2) failing to provide with tenants' utility bills a copy of the provider's bill or a statement that they may inspect the provider's bill at a reasonable time and place and failing to state that tenants may obtain a copy of the provider's bill by making a request to the landlord during the inspection and upon payment to the landlord of the reasonable cost of making copies; (3) failing to provide tenants an explanation of the manner in which the utility provider or service provider assessed their utility or service charges in either the rental agreement or any utility bill; and (4) requiring tenants to pay for utilities and services without

explaining the manner in which the charge for utilities or services was allocated among tenants.

Plaintiff sought statutory damages of "one month's periodic rent" for each of the alleged violations under ORS 90.315(4)(f).

**B.    The Procedural Background.** On November 26, 2021, Plaintiff filed this action in Lane County Circuit Court seeking only injunctive relief and class certification. On that same day, he also sent notice of his intent to amend that Complaint to seek money damages under Rule 32(H) of the Oregon Rules of Civil Procedure.

On January 20, 2022, Plaintiff filed a First Amended Complaint, amending his claim to seek money damages of, "one month's periodic rent for each and every month that the Defendants charged a utility service charge, but violated ORS 90.315(4)(b)…." *First Amended Complaint* ("FAC") ¶ 31 (Dkt. 1, Ex. 1). On February 18, 2022, Defendants removed this action to the United States District Court for the District of Oregon.

On February 25, 2022, Defendants filed a motion to dismiss, seeking to limit recovery of statutory damages under ORS 90.315(4)(f) to a single month's rent or twice the amount wrongfully charged no matter how many utility violations occurred (Dkt. 6). Plaintiff opposed the motion (Dkt. 7), and Defendants replied (Dkt. 11).

On July 1, 2022, the Court granted the Defendants' motion, and allowed the Plaintiff to amend his complaint. Plaintiff filed his Second Amended Complaint on July 18, 2022 (the "SAC.")

In the midst of this motion practice, Defendants produced hundreds of thousands of pages in discovery, which Plaintiff's counsel have reviewed to evaluate the claims.

**C.    The Mediation/Settlement Process.** The Parties began to engage in settlement discussions contemporaneous with the briefing on the Defendant's Motion to Dismiss. These

initial settlement discussions led to the Parties engaging the services of Eric English of Resolution Strategies LLP. Before a formal mediation was held, the parties discussed and advised Mr. English regarding the nature of the case, the strengths and weaknesses of their positions, and the considerations for possible resolution and settlement. On July 15, 2022, the Parties held a full-day mediation session during which they agreed to the principal terms of this settlement. Thereafter, the Parties negotiated the rest of the terms of the agreement, which is now submitted to the Court.

### III.    SUMMARY OF KEY SETTLEMENT TERMS

**A.    The Class Definition.** The proposed settlement class (the "Class") includes: All persons listed as a "Lessee" or "Resident" on a rental agreement for a dwelling unit within any Oregon apartment complex managed by Horizon Realty Advisors and which rental agreement required the payment of a utility charge from April 1, 2019 to September 30, 2022.

The class excludes (i) Defendants; (ii) any person who was an officer, director, or partner of Defendants during the Class Period and any members of their immediate family; (iii) any parent, subsidiary, or affiliate of Defendants; (iv) any firm, trust, corporation, or other entity in which Defendants or any other excluded person or entity has, or had during the Class Period, a controlling interest; (v) the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded persons or entities; and (vi) the Judge or Magistrate Judge to whom the Action is assigned and any member of those Judges' staffs or immediate family members.

**C.    The Settlement Consideration.** The Total Settlement Fund is a lump sum of $2,400,000. Settlement Agreement ¶ 15. This amount includes amounts to be awarded to Class Counsel for attorney fees and expenses, and an incentive award to the Plaintiff. In addition, Defendants will separately pay up to $100,000 for the costs of administration.

     **D.**     **Release of Claims.** Upon the Judgment Date, the Class Representative and Class Members who have not opted out will release all claims as set forth in the Settlement Agreement, including all claims arising out of or based upon the allegations, transactions, facts, matters or occurrences, representations, or omissions involved, set forth, or referred to in the Complaint, FAC or SAC, and that otherwise relate to utility billing practices during the Class Period. Settlement Agreement ¶ 42.

     **IV.**     **NOTICE OF THE SETTLEMENT**

     Upon entry of the Preliminary Approval Order, Class Counsel and Defense Counsel will finalize the list of class members from the Defendant's records, and within 60 days of the later of either entry of the Preliminary Approval Order or Class Counsel's identification of the tenancies, will send that information to the Settlement Claims Administrator. Settlement Agreement ¶ 13. The Settlement Class Members' last known mailing and e-mail addresses will be sent along with the list. The Settlement Claims Administrator will then have 60 days to issue the Class Notice.

     For those Settlement Class Members who still reside at a property managed by Defendant Horizon Realty Advisors LLC, the Settlement Claims Administrator will mail a physical copy of the Class Notice. For those Settlement Class Members who no longer reside at a property managed by Horizon Realty Advisors LLC, the Settlement Claims Administrator will perform investigations to identify current mailing address, and mail to that address. The Settlement Claims Administrator will then e-mail the Class Notice to any Settlement Class Member whose address cannot be identified, or whose mailed notice are returned as non-deliverable. Settlement Agreement ¶ 27. The Settlement Claims Administrator will also maintain a website that will make the Amended Complaint, Class Notice and Settlement Agreement publicly available. Settlement Agreement ¶ 29

V.      ANALYSIS

A.      **The Proposed Settlement Should be Approved by the Court.** The Ninth

Circuit has adopted a "strong judicial policy" favoring settlement of class action lawsuits. *Class*

*Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Lane v. Brown*, 166 F. Supp. 3d

1180, 1188 (D. Or. 2016). Preliminary approval, which is what Plaintiff now seeks, is not a final

and dispositive assessment of the fairness of the proposed settlement, but rather a determination

as to whether it "falls within the range of possible approval" or "within the range of

reasonableness." *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007).

When granting preliminary approval, courts generally order notice be given to the absent class

members and schedule a final approval and fairness hearing for those class members to be heard.

        In order to analyze the fairness of a proposed settlement, courts "must generally weigh"

the following factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity,

and likely duration of further litigation; (3) the risk of maintaining class action status throughout

the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage

of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental

participant; and (8) the reaction of the class members of the proposed settlement. *Churchill Vill.,*

*L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

        As demonstrated throughout this motion, these factors weigh heavily in favor of

approving the Settlement. Although Plaintiff's case is strong, the amount offered in settlement is

significant in light of the fact that the amount of actual damages, if any, suffered by the

Settlement Class Members is very low. In a comparable case, Judge Jeffrey Armistead, in a

similar case approved a settlement of payment of $2,000,000 for claims across approximately

3202 apartment units. *Cidone v. Pinnacle Property Management Services, LLC*, 3:20-cv-01133.

Also, in Multnomah County Circuit Court, Judge Kelly Skye approved a settlement of $1,000,000. *Messner v. Cambridge Real Estate Services Inc.*, Multnomah County Case No. 19CV28815. That settlement was in the form of a rent credit for current tenants, and checks for former tenants. Here, the proposed settlement is $2,400,000 across approximately 1,246 apartment units (although the statute of limitations was expanded due to the impacts of COVID-19, which increased the amount of claims in this action). Moreover, in this proposed settlement, there are no rent credits, and all Settlement Class Members will be distributed a check commensurate with the strength of their claim in a manner agreed to by the Parties.

The Parties have exchanged voluminous discovery giving counsel for the Parties a good sense of the strength of their cases; Class Counsel are experienced both in ORLTA cases in general and ORS 903.15 cases in particular; and the Parties are well-versed in prosecuting class action matters. In addition, if the Parties were to fully litigate this matter, including possible appeals on significant legal issues, this case could drag on for several more years before any class member receives a payment, assuming they even receive one at all.

1.    **The Proposed Settlement Surpasses the Additional Considerations for Pre-Certification Settlements.** When proposed counsel are experienced and support the settlement, which was the result of arm's-length negotiations and relevant discovery has been conducted, there is an initial "presumption that the agreement is fair." *Smith v. Am Greetings Corp.*, 2015 WL 4498571, at *6 (N.D. Cal. July 23, 2015); *Nobles v. MBNA Corp.*, 2009 WL 1854965, at *6 (N.D. Cal. June 29, 2009). The proposed Settlement here was reached only after experienced counsel engaged in extensive discovery and engaged in arm's-length negotiations with the help of an experienced mediator.

However, where, as here, parties to a putative class action have reached a proposed

settlement before the court has granted class certification, the court is to apply, "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)," and the court, "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (internal quotations marks omitted); *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 947 (9th Cir. 2011)*.*

The three signs of a collusive settlement are: (1) class counsel receives a disproportionate distribution of the settlement, or the class receives no monetary distribution but counsel is amply rewarded; (2) the parties negotiated a "clear sailing" provision providing for attorney fees to be paid to Class Counsel separate and apart from the class recovery to which the defendants will not object; and (3) unclaimed class recovery payments will revert to the defendant(s). *In re Bluetooth*, 654 F3d at 947.

The proposed Settlement has none of these three signs. All of the class members will receive an objectively determined *pro rata* payment without having to file any sort of claim. Class Counsel's attorney fees will be awarded out of the common fund and approved by the Court. Class Counsel have agreed to limit their petition for an award of attorney fees to no more than 25% of the common fund, which percentage is frequently awarded in funds of this size. Any uncashed payments to Class Members will be either redistributed amongst the Settlement Class Members, or paid to a *cy pres* non-profit recipient.

**2.    The Settlement does not Grant Preferential Treatment to the Class Representative, and Fairly Allocates the Settlement Funds.** Class action case law recognizes that class members' individual recoveries may differ based on the objective strengths and

weaknesses of their claims. In fact, "approval of a plan of allocation of settlement proceeds in a class action ... is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *In re Oracle Sec. Litig.*, 1994 WL 502054, at *l-2 (N.D. Cal. June 16, 1994) (citing *Class Plaintiffs. v. Seattle*, 955 F.2d at 1284-85). It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits. *In re Omnivision Technologies, Inc.*, 559 F.Supp.2d 1036 (N.D. Cal. 2008) (internal citations omitted).

As explained in more detail in Section V E (The Proposed Plan of Allocation is Fair and Reasonable), below, the settlement class's claims have statutorily prescribed damages based on the amount of monthly rent charged. ORS 90.315(4)(f). In addition, these types of claims regard the landlord's charging utilities used in each dwelling unit regardless of the number of occupants or tenants. Therefore, the plan of allocation applies these two factors: the number of class members in a dwelling unit, and the amount of monthly rent charged to that tenancy's class members.

Thus, each tenancy with a class member in it will be assigned a share equal to the last amount of monthly rent charged. That share will then divided by each of the class members within that tenancy equally. This plan therefore objectively applies the statutory damage provision in allocating the settlement fund properly and justly to each class member according to that member's individual facts and circumstances.

B.     **The Proposed Settlement Class Meets the Standard for Class Certification Under Rule 23.** As part of granting preliminary approval of this class action settlement, a court must determine whether the proposed class can be certified. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997). In order to certify a class, a court must find that:

(1)      the class is so numerous that joinder of all members is impracticable;

(2)      there are questions of law or fact common to the class;

(3)      the claims or defenses of the representative parties are typical of the claims or

defenses of the class; and

(4)      The representative parties will fairly and adequately protect the interests of the

class. Fed R. Civ. P. 23(a).

In addition, a court must find that the proposed settlement class satisfies one of the

requirements of the subdivisions of Rule 23(b). Here, the Plaintiff seeks certification under Rule

23(b)(3) because "questions of law or fact common to class members predominate over any

questions affecting only individual class members" and "a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P.

23(b)(3).

**1.      The Class is Sufficiently Numerous.**  A class must be so numerous that joinder

is impracticable. "Impracticable" does not mean impossible, but only that joinder would be

difficult or inconvenient. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th

Cir. 1964). In the District of Oregon, "approximately forty members is sufficient to satisfy the

numerosity requirement." *Villanueva v. Liberty Acquisitions Servicing, LLC*, 319 F.R.D. 307,

314 (D. Or. 2017) (citations omitted). Here, discovery has confirmed that the class will exceed

4,000 members. *See* Shepard Declaration ¶ 4. Therefore, the numerosity requirement is met.

**3.      There are Common Issues of Law and Fact.** The requirement of Rule 23(a)(2),

often referred to as the "commonality" requirement, requires "plaintiffs to 'demonstrate that the

class members have suffered the same injury,' not merely violations of the 'same provision of

law.'" *Parsons v. Ryan*, 754 F.3d 657, 674–75 (9th Cir. 2014) (quoting *Wal-Mart Stores, Inc. v.*

*Dukes*, 564 U.S. 338, 350 (2011). Indeed, "plaintiffs' claims 'must depend upon a common contention' such that 'determination of their truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Id.* (internal alterations omitted). "So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2). *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013). Rule 23(a)(2)'s inquiry – whether "there are questions of law or fact common to the class" – has been, "construed permissively." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011). Accordingly, the commonality requirement is, "a low hurdle easily surmounted." *Pecover v. Elec. Arts Inc.,* 2010 WL 8742757, at *13 (N.D. Cal. Dec. 21, 2010).

Here, the claims of the Settlement Class center around the same facts: Defendants' charging of utility charges to their tenants, and the Defendants' alleged failure to provide their tenants with a written bill that included certain statutorily required disclosures. Discovery has confirmed that Horizon Realty Advisors LLC, as most property managers who operate at scale, tracked, billed, and categorized the Settlement Class Members consistently across its different apartment complexes. *See* Shepard Declaration ¶ 4. And similarly, resolution of these claims would depend upon a common question: whether the Defendants charged the Settlement Class Members utility or service charges, but failed to issue them utility bills or otherwise violated the various sections of ORS 90.315.

Here, questions of fact and law predominate, and this requirement is easily met.

**5.**     **The Class Representative's Claims are Typical of the Settlement Class Members.**  To satisfy the typicality requirement, a plaintiff must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A class representative's claims are sufficiently typical if they are "reasonably

coextensive with those of absent class members." To determine whether a class representative's claim is typical, the court should focus "'on the defendants' conduct and plaintiff's legal theory,' not the injury caused to the plaintiff." *Lozano v. AT&T Wireless Services, Inc.* 504 F3d 718, 735 (9th Cir. 2007) (quoting *Rosario v. Livaditis*, 963 F2d 1013, 1017 (7th Cir. 1992)).

Here, Plaintiff shares a legal theory with all absent class members because he has brought a statutory claim and seeks statutory damages based upon uniform practices by Defendants. Also, the factual basis for his claim centers on the Defendants' alleged failure to comply with certain statutory disclosures, and the Defendants' practices were generally uniform for all of the Settlement Class Members. Because Horizon Realty Advisors LLC, a large property manager, has economies of scale to conduct its property management operations, its relevant conduct is uniform against Plaintiff and the class. Therefore, the requirement for typicality is met.

7.    **The Class Representative and Class Counsel Adequately Represent the Interests of the Class.** The last prerequisite under Rule 23(a) is that the, "representative parties will fairly and adequately protect the interests of the class." To determine whether a named plaintiff will adequately represent a class, courts must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis.*, 657 F3d at 985 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

Here, the named Plaintiff has no antagonism or conflict with the Settlement Class Members. He has prosecuted this action in order to both ensure compliance with the ORLTA and recover statutory damages on behalf of himself and the absent class members.

Similarly, Class Counsel is experienced in class litigation. Both Messrs. Shepard and Mertz have been granted class certification in other matters over the defendants' opposition.

They have also prosecuted numerous ORLTA utility billing actions, both individual cases and class actions. Mr. Mertz has prosecuted one such claim to verdict. Shepard Declaration ¶ 2-3; Mertz Declaration¶ 3-5.

     **D.**     **The Requirements of Rule 23(b)(3) are Satisfied.** In addition to satisfying the prerequisites under Rule 23(a), a court must be satisfied that one of the three requirements of Rule 23(b) are met. This proposed settlement class satisfies the requirements under Rule 23(b)(3), which are that, (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

     To determine these two questions, the court may consider: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)

     **1.**     **Common Questions of Fact or Law Predominate**.  This inquiry, "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod*, 521 US at 623. This test is different from the commonality prerequisite under Rule 23(a), and requires that common questions "present a significant aspect of the case and [] can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F3d at 1022 (quoting 7A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §1778 (2d ed 1986) ("the proper standard under Rule 23(b)(3) is a pragmatic one")). This is not however a requirement that no individual issues exist, but rather that class common

issues *predominate*. *See Clark v. Bonded Adjustment Co.*, 204 FRD 662, 666 (E.D. Wash 2002).

"More important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F3d 1125, 1134 (9th Cir. 2016). In fact, predominance may be established on the basis of a single common issue, when it is central to the claim. *In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679, 708 (9th Cir. 2018).

Here, all of the most critical questions are common. First, the question of fact, whether Defendants charged the Settlement Class Members utility charges, but failed to provide them with a written utility bill applies to all Settlement Class Members. Furthermore, because this requirement requires a permanent record, which either will or will not exist, the Court is able to determine this issue simply and easily. In addition, because damages are based on the monthly rent charges, individual inquiry into actual damages is unnecessary, and the Court can determine damages based solely on the rental documents. In addition, the critical legal issue raised in Defendants' Motion to Dismiss, whether damages stack on a per violation basis, or are applied just once, are common to all Settlement Class Members.

2.      **The Class Action Mechanism is Superior to Any Other Method of Adjudication**.  The class action mechanism is superior to any other method of adjudication for several reasons. First, as explained above, the statutory nature of the claims and damages, as well as the fact that these claims are based on the existence or non-existence of utility bills, without any scienter requirements, make them especially suited for representative class-wide adjudication. Second, it appears that no absent class members have yet filed any individual claims against Defendants for these claims, despite the applicable statute of limitations having

already passed. Plaintiff, however, has prosecuted this action to a proposed settlement on behalf

of a putative class. Third, the individual amounts at stake are small relative to the costs of

litigation. Fourth, if pursued individually, the individual lawsuits would risk different decisions

from different judges on the merits of the case and the key legal issues.

      **E.**    **The Proposed Plan of Allocation is Fair and Reasonable.**  Approval of a plan

of allocation of settlement proceeds in a class action is governed by the same standards as the

settlement as a whole – the plan of allocation must be fair, reasonable and adequate. *In re*

*Omnivision Techs.*, 559 F. Supp. 2d at 1045. "When formulated by competent and experienced

class counsel, an allocation plan need have only a 'reasonable, rational basis.'" *Scott v. ZST*

*Digital Networks, Inc*., 2013 WL 12126744, at *7 (C.D. Cal. Aug. 5, 2013) (quoting *In re Global*

*Crossing Sec. & ERISA Litig*., 225 F.R.D. 436, 462 (S.D.N.Y. 2004)).

      Because the monthly utility charges that form the basis of Plaintiff's claim are charged in

common to all the tenants who are members of a single rental agreement for a dwelling unit, the

damages in these utility billing actions should be awarded in common to all members of a

particular tenancy. Therefore, counsel for the Parties will determine how many tenancies existed

during the class period as well as determine the last monthly rent amount charged to each

tenancy. To determine these data, counsel are examining the Defendants' internal rent roll

spreadsheets and the rental agreements.

      Rent rolls are used to track both occupancy and rent collection for each separate dwelling

unit for each month. For purposes of this Settlement, a tenancy begins in the month when a

particular Settlement Class Member's name is first entered into the "Resident" column cell on

the same row for a particular entry in the "Bldg-Unit" column cell on the Rent Rolls, and ends on

the last month that that individuals' name is listed in that same "Resident" column. Where a

rental agreement conveys as the rented premises more than one "Bldg-Unit," only a single tenancy is created, notwithstanding there being more than one "Bldg-Unit" for the tenancy listed on the Rent Rolls. Further details regarding the procedure agreed to by counsel for the Parties is found in Section 17(b) of the Settlement Agreement.

Each tenancy will be allocated a share equal to the last monthly rent amount charged to it. Each tenancy's share amount will then be split evenly among all of the Settlement Class Members within that tenancy.

All of the shares will then be summed together, which resulting figure will be the "Total Shares." Each Settlement Class Member's share will then be divided by the Total Shares. The resulting fractions will be multiplied by the Net Settlement Fund.

Settlement Class Members need not file any claims to receive a payment, and all Settlement Class Members who do not opt out will receive a settlement payment.

This *pro rata* allocation is the best approximation of each individualized Settlement Class Members' claim, because the statutory damages sought here are based on the amount of rent charged to the tenancy, and because the utility charge is a common charge among all the tenants to a tenancy.

**F.    The Proposed Settlement Claims Administrator Should be Approved.**

Plaintiff and Class Representative requests the appointment of the Angeion Group ("Angeion") as Settlement Claims Administrator. Angeion will be responsible for establishing a class website, mailing notice to the absent class, receiving and cataloguing request for exclusion from the class, and distributing the settlement fund.

Angeion is a leading class action administration firm whose management team has collectively overseen more than 2,000 class action settlements and distributed over $15 billion to

class members. *See* Weisbrot Declaration (Exhibit D ¶ 9). Its executives regularly teach

continuing legal education courses regarding court-approved notices and administration

programs, write articles for reputable publications, and speak at conferences throughout the

country. *See Id.* ¶ 3. More information regarding Angeion's qualifications is available in the

supporting declaration provided by Steven Weisbrot, President and Chief Executive Officer at

Angeion.

       **G.**     **The Form and Method of Notice Should be Approved.** Rule 23 requires notice

of a proposed class action settlement be "direct[ed] in a reasonable manner to all class members

who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). In addition, Rule 23(c)(2)

requires "the best notice that is practicable under the circumstances, including individual notice

to all members who can be identified through reasonable effort." The rule further allows for

notice by "one or more" of "United States mail, electronic means, or other appropriate means."

Fed R. Civ. P. 23(c)(2)(B). "Although that notice must be reasonably certain to inform the absent

members of the plaintiff class, 'actual notice is not required.'" *Ontiveros v. Zamora*, 303 F.R.D.

356, 367 (E.D. Cal. 2014) (quoting *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994)).

      A class action settlement notice "is satisfactory if it generally describes the terms of the

settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

forward and be heard." *Churchill Vill.,*, 361 F.3d at 575. By rule, the notice must—and the notice

proposed here and attached as <u>Exhibit C</u> does—state the following clearly and concisely and in

plain, easily understood language: (1) the nature of the action (Notice at 3-4); (2) the definition

of the class certified (Notice at 4); (3) the class claims, issues, or defenses (Notice at 3-4); (4)

that a class member may enter an appearance through an attorney if the member so desires

(Notice at 6); (5) that the Court will exclude from the class any member who requests exclusion

(Notice at 5-6); (6) the time and manner for requesting exclusion (Notice at 5-6); and (7) the binding effect of a class judgment on members under Rule 23(c)(3) (Notice at 7).

The Parties' proposed method for providing notice to the Settlement Class Members constitutes the best practicable method under the circumstances. Under that method, the Settlement Claims Administrator will send the notice via first class U.S. Mail, postage prepaid to the Settlement Class Members. *See* Weisbrot Declaration (Exhibit D) ¶ 13. The Settlement Claims Administrator will utilize both the address provided by Defendants' records, as well as the National Change of Address database to obtain updated and more recent addresses for Settlement Class Members. *Id.* ¶ 14. The Settlement Claims Administrator will re-mail any notices returned it by the post office to any updated address listed on the return envelope, and will employ skip tracing for all notices that "bounce back" without an updated address. *Id.* ¶ 15-16. Lastly, for those Settlement Class Members for whom the Settlement Claims Administrator cannot locate a current mailing address, the Settlement Claims Administrator will e-mail the notice. *Id.* ¶ 17.

The Settlement Claims Administrator will also establish and maintain a case-specific website where general information, relevant deadlines and updates and case documents will be available. *Id.* ¶ 18. The website will have a "Contact Us" page where Settlement Class Members can update the Settlement Claims Administrator with current e-mail addresses. *Id.* ¶ 18. Lastly, the Settlement Claims Administrator will maintain a toll-free hotline that will provide automated information to Settlement Class Members at all hours of the day. *Id.* ¶ 19.

The Court should approve both the proposed form and method of notice as satisfying the requirements of Rule 23 and due process as they represent the best practicable notice under these circumstances. *Silber v. Mabon*, 18 F3d 1449, 1454 (9th Cir. 1994).

**H.       The Court Should Appoint Class Counsel.** Rule 23 requires the court to appoint class counsel that will fairly and adequately represent the class. In appointing class counsel, the court must consider (1) the work counsel has done in identifying or investigating potential claims in the action, (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (3) counsel's knowledge of the applicable law, and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). In addition to those four considerations, the court "may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Matthew Shepard and Brady Mertz seek to be appointed Class Counsel. Messrs. Shepard and Mertz are prosecuting numerous other ORLTA utility billing class actions, and have successfully resolved two through final approval, including one in which class certification was granted over opposition. Matthew Shepard has prosecuted dozens of individual ORLTA utility charge cases, including one before the Oregon Supreme Court. Brady Mertz has been appointed class counsel in previous federal class litigation, including *Brunelle v. My Pillow, Inc.*, 3:16-cv-02007-AC, and *Walters v. Vitamin Shoppe, Inc*, 3:14-cv-01173-PK, and as mentioned earlier, prosecuted one class action case involving ORS 90.315 violations in Oregon to Judgment. *See* Shepard Declaration ¶¶ 2-3; *See* Mertz Declaration ¶¶ 3-5.

Messrs. Shepard and Mertz have made appropriate investigation of this matter, have litigated key issues, and have negotiated a settlement, believed to be the largest of its kind involving ORS 90.315 violations, which provides considerable monetary relief to all Settlement Class Members. The Court should appoint Messrs. Shepard and Mertz as class counsel.

## VI.    PROPOSED SCHEDULE OF EVENTS

The proposed Preliminary Approval Order, once entered, would certify this action as a class action for settlement purposes and direct notice to the absent class members regarding the settlement, as well as set in motion several dates and deadlines for the Parties, Class and Defense Counsel, the Settlement Claims Administrator, and absent class members. The Parties have agreed to and proposed the following schedule.

| Date | Event |
|------|-------|
| Within sixty (60) days of the later of either the Preliminary Approval Date or Class Counsel's identification of the tenancies | Class Counsel and Defendants' Counsel provide class member list to Settlement Claims Administrator |
| No later than sixty (60) days following receipt of the class member list from Class and Defense Counsel | Settlement Claims Administrator will establish class website and mail notice to class members by first class mail |
| One Hundred and Fifty (150) days after entry of the Preliminary Approval Order | Due date for filing of Class Counsel's papers in support of final approval of the Settlement and papers in support of the request for an award of attorneys' fees and expenses |
| One Hundred and Eighty (180) days after entry of the Preliminary Approval Order | Due date for postmark or delivery of requests for exclusion and due date for delivery and filing of objections and intents to appear at the Final Approval hearing. |
| To be set by the Court within sixty (60) days of the Objection and Opt-Out Deadline | Final Approval Hearing |

This schedule is similar to others utilized in class action settlements and provides due process to the Settlement Class Members notifying them of their rights regarding the settlement, including their rights to opt-out or object. The Parties request the Court to schedule the Final Approval Hearing between two hundred and ten (210) and within two hundred and forty (240) days of entry of the Preliminary Approval Order in order to allow sufficient time for the Parties, Settlement Class Administrator and absent class members to file any motions, briefing or other materials they may deem appropriate or helpful regarding final approval of the settlement. A proposed final approval order is submitted herewith as Exhibit E.

## VII.    CONCLUSION

Counsel for the Parties have reached this settlement after exchanging voluminous discovery, motions practice on the key issues that drive resolution, and hiring an experienced private mediator. The Court need not now give final approval to this Settlement, but merely must rule as to whether the Settlement is fair, reasonable and adequate. If it does so, notice of the terms of the settlement will be provided to the Settlement Class Members, and a Final Approval Hearing will be scheduled for the Court to make the final decisions regarding (1) approval of the settlement, (2) certification of the Settlement Class, (3) approval of the plan of allocation, (4) Class Counsel's request for attorney fees and expenses, (5) entry of the Final Judgment and Order and (6) other matters the Court may deem appropriate.

DATED: January 13, 2023.

/s/ Matthew G. Shepard, OSB 105009
685 Church St. NE, Salem, OR 97301
Telephone: 503-385-0121
matt@mshepardlaw.com

/s/ Brady Mertz, OSB 970814
Brady Mertz, PC
685 Church St. NE, Salem, OR 97301
Telephone: (503) 385-0121
brady@bradymertz.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that, on January 13, 2023, this document was filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the docket, and that paper copies will be sent by U.S. mail, postage prepaid, to anyone indicated as non-registered participants.

DATED: January 13, 2023.          */s/ Matthew G. Shepard*, OSB No. 105009
                                   685 Church St. NE, Salem, OR 97301
                                   Tel: 503-385-0121; matt@mshepardlaw.com
                                   Of Attorneys for Plaintiff